UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STAVROS PAPANTONIADIS<br><br>Defendant | CRIMINAL No. 23-cr-10089-FDS |

GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE IMPEACHMENT REGARDING IMMIGRATION STATUS AND ADMIT PRIOR CONSISTENT STATEMENTS

The United States of America, by Joshua S. Levy, Acting United States Attorney, and Brian A. Fogerty and Timothy E. Moran, Assistant United States Attorneys for the District of Massachusetts, moves *in limine* to admit evidence of the victims' prior consistent statements pursuant to Fed. R. Evid. 801(d)(1)(B). At the same time, the United States moves to preclude impeachment regarding immigration benefits which have already been granted.

## Background

I.  Overview of Papantoniadis' forced labor operation.

Papantoniadis owns and, prior to his arrest in this case, operated a network of pizzerias in greater Boston (hereinafter, "Stash's Pizzerias"). Papantoniadis ran Stash's Pizzerias as a multi-year forced labor operation. Papantoniadis targeted and recruited undocumented, foreign national employees. Once employed, he forced victims to continue working at the pizzerias for long hours without overtime or the wages he had promised. He did this by exploiting the victims' lack of immigration status in the United States. When a victim failed to comply with his workplace demands or indicated that he or she needed to take a day off or quit, Papantoniadis would threaten (1) to report the victim to immigration authorities, and/or (2) to use violence to keep the victim

1

working for him.  In several cases, he physically beat victims when he believed they were non-compliant or intended to leave his operation.  ECF No. 17, ¶¶ 4–5.

    II.    <u>Papantoniadis threatened to report victims to immigration authorities and said that he was responsible for the deportation of a former employee</u>.

Papantoniadis' operation was effective, in part, because of the defendant's pervasive threats of deportation.  None of the victims had legal status in the United States, and they all feared being removed from the country.  According to victims and trial witnesses, Papantoniadis told victims that he would report them to immigration authorities.  And he also repeated these threats to groups of employees to ensure that the message spread through his undocumented workforce.

In addition, at trial, the government expects that certain victims will describe how Papantoniadis took credit for, and used to his advantage, the deportation of a former Stash's Pizzeria employee named "Ruben."  Victim 6 will testify that Ruben was an undocumented employee who planned to quit Stash's Pizzerias.  However, shortly after learning about Ruben's plan to leave, Papantonaidis told Victim 6 that Ruben had been deported.  Papantoniadis told Victim 6 that he was responsible for immigration authorities deporting Ruben as well as Ruben's roommates.

    III.    <u>During the investigation, victims and witnesses received government benefits.</u>

As the Court is aware, this case began with a civil investigation by the Department of Labor's Wage and Hour Division into allegations of unpaid overtime wages.  As part of that investigation, DOL civil investigators obtained sworn statements from the victims and other witnesses regarding their treatment by the defendant, including both the non-payment of overtime and the defendant's threats of deportation and of violence toward them.  These initial statements were made *before* the victims and witnesses received immigration benefits (they often made additional sworn statements at other points in the civil investigation).  In fact, DOL investigators,

who took the statements, typically did not discuss immigration status with the victims and witnesses.

Criminal investigators from DOL's Office of the Inspector General ("DOL-OIG") and Homeland Security Investigations ("HSI") subsequently began an investigation that resulted in the pending forced labor charges. As part of the joint criminal investigation, DOL-OIG and HSI agents, sometimes with AUSAs, interviewed the victims and witnesses. As part of those interviews, the agents asked victims about their immigration status. Some of these victims and witnesses also testified in the federal grand jury.

The victims in this case received two main immigration benefits: continued presence, which is a temporary legal status accorded to trafficking victims during the investigation of the case; and a T Visa, which is a permanent status granted to trafficking victims (in other words, once awarded, a T Visa cannot normally be revoked; the recipient can also sponsor relatives for entry and naturalize).

The immigration benefits came about in two ways. First, after the civil investigation began, Victims 1 through 4, and 6 and 7 (i.e., all but Victim 5) came to be represented by legal aid attorneys and, through counsel, applied for T Visas. They submitted those applications at various times, sometimes well after the criminal investigation began and requested certifications that the applicant was a trafficking victim from Wage and Hour Division or HSI. Each of the completed applications includes a certification from either the Regional Administrator of the Wage and Hour Division or an HSI Special Agent. At this point, the T Visas of Victims 1 through 3 and 7 have been approved. Only Victims 4 and 6 have a pending T Visa application.

Second, HSI agents applied for continued presence for the victims and certain witnesses and, if necessary, applied to renew that status. Again, at this point, continued presence is not

necessary for Victims 1 through 3 and 7 because they now hold T Visas, which is a permanent status and does not require renewal. Finally, both continued presence and T Visas grant the recipient the authority to work.

## Legal Standard

Rule 801(d)(1)(B) provides that a statement is not hearsay, where the "declarant testifies and is subject to cross-examination about a prior statement, and the statement is consistent with the declarant's testimony and is offered (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground". "The 'prior statement' must be made 'before the charged recent fabriacation or improper influence or motive.'" *United States v. Jahagirdar*, 466 F.3d 149, 155 (1st Cir. 2006), *citing Tome v. United States*, 513 U.S. 150, 167 (1995).

Prior consistent statements can also be offered for credibility, in which case their admissibility is not governed by Rule 801. *United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001). Under the rule of completeness and the common law doctrine about prior consistent statements, "prior statements are admissible which tend to show the statement is not really inconsistent when it is understood in its proper context." *Id.*

## Argument

The government anticipates that the defendant will attempt to impeach the victims and other witnesses who received immigration benefits. Specifically, the government anticipates that defense counsel will question those witnesses regarding a potential bias to testify favorably to the government in order to obtain immigration benefits. However, with the exception of Victim 6, the victims have already received permanent immigration benefits. They do not have to testify at trial to obtain the permanent immigration status they already possess. In other words, the immigration

benefit was already conferred, in most cases, years ago.  Accordingly, the benefit is not a proper area of cross-examination.  *See United States v. Ulloa*, 942 F. Supp. 2d 202, 206-207 (D.N.H. 2013) ("a decades-old contretemps with immigration authorities does not make it particularly likely that [witness] has any present motive to shade his testimony to please the government").  Rather than being probative of the victims' alleged bias, such cross-examination would merely highlight the undisputed fact that the victims and witnesses are immigrants.

The defendant may seek to cross-examine the victims and certain witnesses with the fact that, when they made prior statements to DOL and/or HSI, they were seeking immigration benefits.  However, the government anticipates that those prior statements will be consistent with the victim and witnesses' respective trial testimony.  Defendants may not cross the witnesses regarding prior *consistent* statements unless the requirements of Rule 801, discussed above, are met.

In the event that the Court does permit the defendant to impeach regarding pending immigration benefits, as would be the case for Victims 4, 5 and 6, the government will seek to rehabilitate their testimony with the prior consistent statements they made during their respective sworn DOL interviews.  Those statements are consistent, were made prior to the charge of fabrication, and would rebut that charge of fabrication because they were made without regard to immigration benefits.  Therefore, the Court should admit them pursuant to Rule 801(d)(1)(B).

Finally, prior consistent statements may be admissible in other contexts which may become apparent at trial.  For example, Victim 1 testified before the grand jury in January 2020, while his T Visa application was pending.  However, an I-130 Petition for an Alien Relative (more commonly known as a marriage immigration benefit), filed by Victim 1's wife on his behalf, had already been granted.  As a result, Victim 1 had status and was not in danger of being deported.

The statements that Victim 1 made in the grand jury may be admissible as prior consistent statements pursuant to Rule 801(d)(1)(B) or for some other reason.

## Conclusion

For the above stated reasons, the United States respectfully requests that the Court preclude cross-examination on immigration benefits where such benefits have already been obtained; and admit prior consistent statements pursuant to Rule 801(d)(1)(B) where appropriate.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   /s/ *Timothy E. Moran*
TIMOTHY E. MORAN
BRIAN A. FOGERTY
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

      /s/ *Timothy E. Moran*
      TIMOTHY E. MORAN
      Assistant United States Attorney

Date: May 6, 2024