UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STAVROS PAPANTONIADIS<br><br>Defendant | CRIMINAL No. 23-cr-10089-FDS |

**SUPPLEMENTAL SENTENCING MEMORANDUM OF THE UNITED STATES CONCERNING RESTITUTION**

The United States hereby submits this supplemental memorandum to assist the Court in fashioning the Order of Restitution in this case. As noted in the PSR, restitution is mandatory for the victims.[1] PSR ¶ 193. In total, the Court should order the defendant to pay $129,585.42 in restitution, as set forth below.

**The Legal Framework**

Under 1593(b), the defendant must pay each of his victims "the full amount of the victim's losses," a term that includes, among other things, lost income. *See* 18 U.S.C. §§ 1593(b)(1) & (3); 2259(b)(3)(D). By statute, the "full amount of the victim's losses" includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*). § 1593(b)(3). "In calculating the dollar figure owed in restitution, the court need only make a 'reasonable determination of the appropriate restitution.'" *United*

---

[1] The PSR notes that restitution is mandatory pursuant to 18 U.S.C. § 3663A, which makes restitution mandatory in any case involving a specific victim. While that statute certainly applies, the government notes that restitution is also mandatory pursuant to 18 U.S.C. § 1593, which sets forth a separate restitution scheme, as discussed below.

*States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012) (quoting *United States v. Innarelli*, 524 F.3d 286, 294 (1st Cir. 2008)).[2]

In this forced labor case, the defendant coerced labor from hourly-wage employees at his chain of pizza restaurants. While the defendant paid the victims at an hourly wage at or in excess of the minimum wage, as demonstrated at trial, he did not pay the victims for all of their hours worked and did not pay overtime wages. As a result, the proper measure of restitution should be the hours that were unpaid *plus* the unpaid overtime, at the victims' actual hourly wage. However, as a practical matter, the unpaid wages proved difficult to verify and, in a conservative analysis, the government seeks restitution for the unpaid overtime only. In addition, in a further effort to be conservative, the government ran the calculation from March 31, 2013, regardless of when the victim actually started working for the defendant. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."); *see also United States v. Edwards*, 19 F. Supp. 3d 366, 376 (D. Mass. 2014) (rejecting restitution requests that lacked "the necessary foundation" or were "seemingly arbitrary").

## The Back Wage Calculations

As the Court is also aware, prior to the criminal investigation, the Department of Labor Wage and Hour Division ("WHD") brought a civil lawsuit over unpaid overtime, which is

---

[2] *Kearney* dealt with restitution under the 18 U.S.C. § 2259 (the restitution provision of the "Violence Against Women" portion of the Violent Crime Control and Law Enforcement Act of 1994), not with restitution under § 1593. *See Kearney*, 672 F.3d at 91. Like § 1953, however, § 2259 contains language directing that orders of restitution be "issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." § 2259(b)(2). Section 1593 employs the same language and incorporates the same definition of the "full amount of the victim's losses." §§ 1593(b)(2) & (3).

significant in two ways. First, WHD already had the relevant timesheets, time adjustments and other records, which it originally obtained from the defendant as part of civil discovery. WHD calculated the overtime owed and has provided that calculation to the government for its restitution request. Second, as part of the settlement of that civil case, the defendant made a partial payment of back wages and liquidated damages. The restitution order should incorporate credit for the partial payment but the Court should be aware that, for the sake of the settlement, the plaintiffs accepted payment of less than the actual losses, figuring that a voluntary payment of a percentage of the total recovery was better than continuing to litigate for a chance at full payment – a not uncommon position for civil litigants.[3] *See United States v. Parsons*, 141 F.3d 386, 393 (1st Cir. 1998) ("release by the victim does not preclude or cap restitution of losses as part of criminal sentencing in a case where there is no double recovery").

As set forth in the attached spreadsheet, WHD calculated the restitution amount due to each of the six victims. *See* Attachment A. For each victim, the calculation started with the victim's start and end date, incorporated an approximate number of hours worked per week over that time period to determine the number of hours of overtime and multiplied those hours by "time and a half," the applicable wage. For the five victims who received the partial payment, i.e., all except Thiagao Teixeira, who opted out of the WHD case, the calculation deducted the amount of the back wages already recovered through the civil settlement, leaving the total amount due. *See* Attachment A, WHD Spreadsheet. Specifically, the Court should award $112,085.42, broken down as follows:

---

[3] The defendant does not receive credit for the payment of liquidated damages, which is a civil penalty not applicable to the criminal process.

- For Victim Two (Jose Antonio Hernandez Navarette): $18,816.66 ($27,435.30 in back wages from July 7, 2013, through November 15, 2015, minus partial payment of $8,618.64).

- For Victim Three (Tharcisio Do Carmo): $28,925.16 ($48,440.00 in back wages from March 31, 2013, through July 24, 2016, minus partial payment of $19,514.84).

- For Victim Four (Sylvia Bonilla): $4,506.49 ($6,354.25 in back wages from March 31, 2013, through July 31, 2016, minus partial payment of $1847.76).

- For Victim Five (Thiago Teixeira): $6,286.50 (back wages from March 31, 2013, through August 25, 2013, with no credit for partial payment).

- For Victim Six (William Dos Passos): $18,385.29 ($26,262.00 in back wages from June 15, 2013, through May 3, 2015, minus partial payment of $7,876.71).

- For Victim Seven (Julio Cesar Yanes Reyes): $35,165.32 ($40,436.83 in back wages minus partial payment of $5,271.51).

Attachment A details the method of calculation with more specificity.

## Additional Request for Counseling

In addition to back wages, victims of forced labor are entitled to restitution for the "full amount of the victim's losses," including personal losses. 18 U.S.C. § 1593(b)(1)-(3). The government is also seeking restitution for Victim Four (Bonilla)'s personal losses, specifically costs incurred or "reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim" for medical services, relating to psychiatric or psychological care. *See* 18 U.S.C. § 1593(b)(3); 18 U.S.C. § 2259(c)(2). In this case, Victim Four

4

will require $17,500 for anticipated mental health treatment and pharmacological treatment over the next 18 months.  *See* Attachment B (Affidavit of Cynthia Kennedy, LICSW) and Attachment C, submitted under seal (Affidavit of Casandra Arevalo, LICSW).

The First Circuit "view[s] the issues raised by the restitution scheme in three steps: (1) the requirements for an individual to be considered a 'victim' within the meaning of § 2259(c); (2) the causation requirement applicable to determining which 'costs incurred by the victim,' *id.* § 2259(b)(3), are compensable; and (3) assuming that a victim has identified compensable costs that satisfy the causation requirement, whether the district court made a reasonable determination of a dollar figure." *Kearrney* 672 F.3d at 93 (citations omitted).

First, 18 U.S.C. § 1593(c) defines "victim" as the individual harmed as a result of a crime under this chapter.  There is no doubt that Victim Four, named in the indictment and jury verdict form as the victim in Count Four, was the individual harmed as a result of that crime and thus satisfies the statutory definition.

Second, 18 U.S.C. § 1593(b)(3) provides that the "full amount of the victim's losses" has the same meaning as provided in § 2259(c)(2), which in turn covers "costs that are reasonably projected to be incurred in the future… including medical services relating to physical, psychiatric, or psychological care".  § 2259(c)(2)(A).[4]  As demonstrated by the Arevalo Affidavit, the mental health trauma suffered by Victim Four meets the proximate cause requirement: Victim Four "continues to suffer from the psychological impact of the exploitation and abuse she suffered from her ex-employer, Steve."  Attachment C (sealed) at ¶ 9.  Moreover, such harms were foreseeable at the time.  *See Kearney*, 672 F.3d at 97 (approving mental health treatment as restitution for

---

[4] As noted in *Kearney*, this provision is not included in other restitution statutes.  672 F.3d at 97.

5

psychological harm proximately caused to child pornography victim). While, to some extent, Victim Four was more susceptible to psychological harm because of trauma that she had suffered as a child in El Salvador, to exclude her claim for that reason would apply a "but for" causation standard – which the First Circuit expressly precluded. *Id.* at 98.

Third, determination of the final amount must be "reasonable" and "[a]bsolute precision is not required." *Id* at 100 (quotations omitted). The Kennedy Affidavit carefully and reasonably sets forth that amount, which includes:

- counselling sessions of one hour each, weekly or biweekly, for a period of up to 18 months (i.e., 50 sessions), at a cost of $250 per hour, totaling $12,500; and

- one one-hour medical evaluation, to be followed by a 30 minute appointment once per month for 18 months (i.e., 18 thirty minute appointments totaling 9 hours), at a cost of $500 per hour, totaling $5,000.

This estimate, supplied by an expert in the field, is carefully detailed, reasonable in scope, duration and price, and should be adopted by the Court.

**Conclusion**

For the foregoing reasons and those to be stated at the hearing, the government requests a restitution order of $129,585.42, consisting of $112,085.42 in back wages and $17,500 in mental health treatment costs.

                                Respectfully submitted,

                                JOSHUA S. LEVY
                                Acting United States Attorney

By:    /s/ Timothy E. Moran
        BRIAN A. FOGERTY
        TIMOTHY E. MORAN
        Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                     /s/ Timothy E. Moran
                                    Timothy E. Moran
                                    Assistant United States Attorney

Date: October 23, 2024